WILLIAM C. SMAIL, JR., AND CAROL R. SMAIL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2680–71.    Filed August 22, 1973.

*James A. Clark*, for the petitioners.

*Thomas M. Ingoldsby*, for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency of $131.75 in petitioners' income tax for the calendar year 1968. The issues for our decision are: (1) Whether petitioners should be allowed, under section 214, I.R.C. 1954,[1] a deduction of $600 for child care expenses incurred between January 1, 1968, and May 28, 1968 (the earlier period); and (2) whether respondent properly disallowed $75 of a claimed $300 deduction for child care expenses for the period May 29, 1968, through August 24, 1968 (the later period), on the ground that such $75 was allocable to expenses for which section 214 allows no deduction.

### FINDINGS OF FACT

Some of the facts were stipulated and are so found.

Petitioners William C. Smail, Jr. (hereinafter referred to as petitioner), and Carol R. Smail are husband and wife, who, at the time they filed their petition herein, resided in Denver, Colo. They filed their joint Federal income tax return for the taxable year 1968 with the district director of internal revenue, Denver, Colo.

Petitioner married Marjorie Elizabeth Smail on September 4, 1959. Over the course of their marriage, the couple had three children, all of whom were under 13 years of age throughout 1968. On May 28, 1968, the marriage was terminated by a decree of divorce issued by the District Court, Arapahoe County, Colo. Custody of the three children, who resided with petitioner throughout 1968, was granted to petitioner. On August 24, 1968, petitioner married Carol R. Smail (Carol).

During 1968, petitioner was a surgical resident at the University of Colorado Medical Center. Because his work required that he be away from home an average of 36 out of every 48 hours, he hired Viona Stidman (Viona) and later Irmgard Andrae (Irmgard) to care for the children on a full-time basis. Viona and Irmgard worked for petitioner

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All references to sec. 214, however, unless otherwise indicated, are to that section prior to its amendment by Pub. L. 92–178, sec. 210 (Dec. 10, 1971).

from January 1, 1968, to August 24, 1968. Their duties included looking after the children, preparing their meals, and cleaning the children's rooms and clothing. Payments to the two were as follows:

| Payments to Viona Stidman | | Payments to Irmgard Andrae | |
| --- | --- | --- | --- |
| Date | Amount | Date | Amount |
| Jan. 1, 1968 | $95.60 | Mar. 30, 1968 | $50 |
| Jan. 15, 1968 | 95.60 | Apr. 9, 1968 | 100 |
| Feb. 1, 1968 | 89.90 | Apr. 23, 1968 | 100 |
| Feb. 15, 1968 | 95.60 | May 8, 1968 | 50 |
| Mar. 4, 1968 | 95.60 | May 18, 1968 | 180 |
| | | June 11, 1968 | 100 |
| | 472.30 | June 22, 1968 | 100 |
| | | July 9, 1968 | 100 |
| | | | 780 |

On his 1968 joint return with Carol, petitioner deducted as child care expenses $900 of the sums paid Viona and Irmgard. His computation of 1968 adjusted gross income, which is not in dispute, was $8,126.54. In his notice of deficiency, respondent disallowed $675 of the $900 claimed. On brief it is made clear that the entire $600 for the earlier period was disallowed and that the $75 disallowed for the later period was on the basis of only $225 having been substantiated as paid for child care.

### OPINION

The first issue for our decision is whether respondent properly disallowed the $600 deduction claimed by petitioner for child care expenses during the earlier period.[2] It is respondent's position that section 214[3] clearly does not provide a deduction to petitioner for these expenses. During such period, respondent points out, petitioner was neither a widower, nor a husband with an incapacitated wife, the only

---

[2] Petitioner paid $952.30 to Viona and Irmgard during the earlier period, and $300 during the later period. Respondent following examples (4), (5), and (7) of sec. 1.214-1 (c)(3)(ii), Income Tax Regs., deemed $300 of the deduction to have been claimed for the later period when petitioner was unmarried and $600 for the earlier period, during which he was married. Some such allocation is required for two reasons: (1) Sec. 214 places a ceiling of $900 on the deduction allowed when care is provided for two or more dependents (sec. 214(b)(1)(B)); (2) an individual wishing to take deductions for any period during which he is married faces further limitations under the statute as to such period. Sec. 214(b)(2). Such additional restrictions will be discussed in detail below.

Petitioner does not dispute respondent's method of allocation, and we accept it as a reasonable and convenient means of administering the statute.

[3] We must emphasize that sec. 214 was extensively revised under the Revenue Act of 1971 as to all taxable years beginning after Dec. 31, 1971. Pub. L. 92-178, sec. 210 (Dec. 10, 1971). Because the instant case involves only the 1968 taxable year, our decision here applies and interprets the statute as it was prior to the 1971 revision. As applicable to the 1968 taxable year, sec. 214 provided as follows:

SEC. 214. EXPENSES FOR CARE OF CERTAIN DEPENDENTS.

(a) GENERAL RULE.—There shall be allowed as a deduction expenses paid during the taxable year by a taxpayer who is a woman or widower, or is a husband whose wife is incapacitated or is institutionalized, for the care of one or more dependents (as defined

cases in which the statute allows males to deduct for child care expenses. Sec. 214(a). Petitioner, while not challenging respondent's reading of the statute, contends that if he were a female, he would be able to take the deduction for the earlier period under (a) and (d)(5)(A) of section 214. He then goes on to argue that the statute, as written, invidiously discriminates on the basis of sex, and hence is unconstitutional under the due process clause of the fifth amendment to the Constitution

in subsection (d)(1)), but only if such care is for the purpose of enabling the taxpayer to be gainfully employed.

(b) LIMITATIONS.—
(1) DOLLAR LIMIT.—
(A) Except as provided in subparagraph (B), the deduction under subsection (a) shall not exceed $600 for any taxable year.
(B) The $600 limit of subparagraph (A) shall be increased (to an amount not above $900) by the amount of expenses incurred by the taxpayer for any period during which the taxpayer had 2 or more dependents.
(2) WORKING WIVES AND HUSBANDS WITH INCAPACITATED WIVES.—In the case of a woman who is married and in the case of a husband whose wife is incapacitated, the deduction under subsection (a)—
(A) shall not be allowed unless the taxpayer and his spouse file a joint return for the taxable year, and
(B) shall be reduced by the amount (if any) by which the adjusted gross income of the taxpayer and his spouse exceeds $6,000.
This paragraph shall not apply, in the case of a woman who is married, to expenses incurred while her husband is incapable of self-support because mentally or physically defective, or, in the case of a husband whose wife is incapacitated, to expenses incurred while his wife is institutionalized if such institutionalization is for a period of at least 90 consecutive days (whether or not within one taxable year) or a shorter period if terminated by her death.
(3) CERTAIN PAYMENTS NOT TAKEN INTO ACCOUNT.—Subsection (a) shall not apply to any amount paid to an individual with respect to whom the taxpayer is allowed for his taxable year a deduction under section 151 (relating to deductions for personal exemptions).
(c) SPECIAL RULE WHERE WIFE IS INCAPACITATED OR INSTITUTIONALIZED.—In the case of a husband whose wife is incapacitated or is institutionalized, the deduction under subsection (a) shall be allowed only for expenses incurred while the wife was incapacitated or institutionalized (as the case may be) for a period of at least 90 consecutive days (whether or not within one taxable year) or a shorter period if terminated by her death.
(d) DEFINITIONS.—For purposes of this section—
(1) DEPENDENT.—The term "dependent" means a person with respect to whom the taxpayer is entitled to an exemption under section 151(e)(1)—
(A) who has not attained the age of 13 years and who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the taxpayer; or
(B) who is physically or mentally incapable of caring for himself.
(2) WIDOWER.—The term "widower" includes an unmarried individual who is legally separated from his spouse under a decree of divorce or of separate maintenance.
(3) INCAPACITATED WIFE.—A wife shall be considered incapacitated only (A) while she is incapable of caring for herself because mentally or physically defective, or (B) while she is institutionalized.
(4) INSTITUTIONALIZED WIFE.—A wife shall be considered institutionalized only while she is, for the purpose of receiving medical care or treatment, an inpatient, resident, or inmate of a public or private hospital, sanitarium, or other similar institution.
(5) DETERMINATION OF STATUS.—A woman shall not be considered as married if—
(A) she is legally separated from her spouse under a decree of divorce or of separate maintenance at the close of the taxable year, or
(B) she has been deserted by her spouse, does not know his whereabouts (and has not known his whereabouts at any time during the taxable year), and has applied to a court of competent jurisdiction for appropriate process to compel him to pay support or otherwise to comply with the law or a judicial order, as determined under regulations prescribed by the Secretary or his delegate.

of the United States. To remedy the constitutional defect, he contends, he must be allowed the same deduction which section 214 provides for females in his situation. In reply, respondent argues that the issue of constitutionality was not properly raised, as it was not set forth in the original or amended pleadings. Petitioner had informed respondent at the trial that such an argument would be raised on brief, but respondent contends that such notice is not sufficient to place the issue before the Court. Alternatively, respondent disputes petitioner's constitutional argument and the remedy he seeks.

We conclude that we need not reach the questions of proper raising of constitutionality or remedy. We find that even if we were to declare the statute unconstitutional, and allow petitioner to take deductions under the statute as if he were a female, that he would not be able to deduct the $600 he is claiming for child care expenses in the earlier period.

It is petitioner's contention that, if he were a female, he would be able to avail himself of section 214(d)(5)(A): "DETERMINATION OF STATUS.—A woman shall not be considered as married if—(A) she is legally separated from her spouse under a decree of divorce or of separate maintenance at the close of the taxable year." A woman who so qualifies for single status need not file a joint return with her spouse in order to deduct the child care expenses she incurred during that part of the taxable year during which she was married. Sec. 214(b) (2)(A). In addition, she is not subject to the adjusted gross income limitation contained in section 214(b)(2)(B) as to such portion of the taxable year. Under (b)(2)(B), all married women, except those whose husbands are incapable of self-support, must reduce the maximum amount allowed as a child care deduction by the amount by which adjusted gross income, as reflected in the joint return, exceeds $6,000. Thus, a married woman with two or more children, since her maximum deduction is $900 in any case, would be unable to claim a section 214 deduction if the adjusted gross income of her and her spouse exceeded $6,900. Hence, petitioner, whose adjusted gross income in 1968 was over $8,100, must obtain single-woman treatment under the statute if he is to be allowed any deduction for the earlier period during which he was married.

We find that petitioner, if he were a female, could not avail himself of the single-woman status provided by section 214(d)(5)(A). For, while he did obtain a divorce from his first wife on May 28, he married again before the end of the taxable year, and it is our determination that women who remarry in the taxable year in which they have obtained a divorce do not qualify for the single-woman status provided by the statute. We make this determination, however, in the absence of

any definitive statement in either the statute, the regulations, the case law, or the legislative history. The statute, it may be noted, speaks in terms of divorce "from her spouse * * * at the close of the taxable year." In the case of the woman who marries within the taxable year of her divorce, we are left unsure, under the express wording of the statute, whether the "spouse" to whom the statute refers is the most recent spouse of the woman, or the spouse whom she divorced during the taxable year. In the absence of direct assistance from the statute, or from any of the aforementioned sources, we have instead reviewed the structure and functions of section 214, and especially subsection (d) (5) (A) and have determined how, in light of the congressional purposes we found through such review, the situation before us should be handled.

It has been pointed out above that a woman, married at some time during the taxable year, who is able to bring herself under section 214(d) (5) (A), achieves two benefits. First, she is not required to file a joint return with her spouse, as would otherwise be required under section 214(b) (2) (A), in order to obtain a deduction for that part of the taxable year during which she was married. (See *Jean L. Conti Price*, 34 T.C. 163 (1960), and *Hulick* v. *Commissioner*, 357 F.2d 329 (C.A. 2, 1966), affirming a Memorandum Opinion of this Court, for cases in which the failure to file a joint return was fatal to married women seeking a section 214 deduction.) This is an allowance of vital importance to the divorced woman in the year of her divorce, for under section 6013(d) (2), she would not be allowed to file a joint return for such year with her former spouse.[4] (See sec. 1.6013-4(a), Income Tax Regs.) In addition, she is allowed a full deduction for child care expenses (up to $900 for two or more children), without the adjusted gross income limitation generally placed on women during the period in which they are married. Sec. 214(b) (2) (B) ; see also sec. 1.214-1 (c) (3) (ii), examples (4), (5), (7), (9), Income Tax Regs. It is to be noticed that the adjusted gross income limitation is not applicable elsewhere in the statute solely in situations in which only one parent is both present in the home and able to work and provide an income for the other family members. These situations include cases involving single women, widows and widowers, deserted wives, wives with incapacitated husbands, and husbands with institutionalized wives. Sec. 214(b) (2) and (d) (5).

It is our reading of the statute that these exemptions from statutory requirements are not so pertinent in the case of a woman divorced and

---

[4] For that part of the year during which she was divorced, and for all subsequent years and parts of years during which she remained single, the woman would be considered a single woman, and hence not subject to the limitations placed on married women by sec. 214(b) (2).

remarried in the same year as to make it incumbent or even appropriate to apply such benefits to her. First, there is no need to exempt her from the joint return requirement for she can file such a return with her new spouse. Sec. 6013(d)(1). In such return, she can deduct for child care expenses incurred both during the period of the year when she was legally single, as well as for the current and previous periods of the year during which she was married. A deduction in such return for the expenses incurred during the prior marriage would be in accord with express language in the statute to the effect that deductibility of child care expenses is granted to that taxpayer who is enabled to be gainfully employed as a result. Sec. 214(a). See also S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 220–221 (1954). It should make no difference, thus, that the spouse with whom she has filed the joint return is not the same spouse to whom she was married at the time she made the earlier expenditures.

Also, we do not think that the rationale for allowing the divorced woman to escape the gross income limitation is fully operative until after the divorce has taken place. For, it is only from that time that she is in much the same situation as the other individuals—widows, widowers, etc.—for whom the statute provides a similar exemption. In all such cases, as mentioned above, only one of the parents is both present in the home and able to work for an income for the rest of the family.[5] It may be argued that Congress allowed the divorced woman to escape the adjusted gross income limit for that part of the taxable year during which she was married because it recognized that probably in the vast majority of divorce cases, the spouses did not live together for some period before the divorce. However, we cannot find this to have been the congressional rationale for so writing the statute. Not only are we unable to find any support for such a rationale in the legislative history, but we would also, were we to accept the rationale suggested, be required to ascribe to Congress the use of a rather capricious tool to fulfill the alleged purpose. For under the statute, a woman divorced on January 15 would be unable to obtain unmarried status for any part of the prior taxable year during which she had lived alone. The woman divorced on December 15, on the other hand, would have unmarried status for the entire year, regardless when during that year or prior years she and her husband began to live apart.[6] It is also to be

---

[5] In sec. 214 as amended by the Revenue Act of 1971, Congress placed a further requirement upon a taxpayer seeking a child care deduction. A taxpayer now has to establish that he (and his spouse if he is married) provided over one-half the cost of maintaining the household. Sec. 214(a) and (b)(3) as amended by Pub. L.92–178, sec.210 (Dec. 10, 1971). Thus, a working single woman who lives, together with her children, with someone else who provides over half of such household cost, would be unable to qualify for any child care deduction. The statute in its pre-1971 form, however, recognized no such limitation.

[6] Of course, Congress may draw arbitrary lines in attempting to give effect to some purpose. We simply do not think, however, that Congress had the alleged purpose in mind.

noted that Congress, in section 214(d)(5)(B), specifically provided single status for women who have been deserted by their husbands, but who are not yet divorced or separated under a decree of separate maintenance. Petitioner makes no argument, nor could he under the facts contained in the record, that were he a woman, he could qualify for the exemption allowed deserted wives.[7]

Thus, it is our conclusion that section 214(d)(5)(A) should not be read to grant to a woman who both obtains a divorce and remarries during the same taxable year, the status of a single woman under the statute for any portion of that year during which she was, in fact, married. In the instant case, thus, we would treat a female in petitioner's situation as being married during the earlier period. Because the joint return to which she was a party showed adjusted gross income in excess of $6,900, she would be denied any child care deduction for that period. Sec. 214(b)(2)(B). Thus, even were we to declare section 214 unconstitutional, and extend the coverage allowed women to petitioner, he would not be allowed any deduction under the statute for the earlier period. Hence, we uphold respondent's action in disallowing the deduction for the earlier period.[8]

The only other issue for our decision is whether respondent erred in disallowing $75 of a claimed $300 child care deduction for expenses incurred during the later period. Respondent agrees that petitioner is entitled to at least $225 of the $300 claimed for such period. Respondent argues however, that $75 of the amount claimed as a deduction for the later period was paid for services traditionally performed by an ordinary domestic—specifically, preparing the children's meals, and cleaning their rooms and clothing. It is his contention that Congress did not intend that section 214 should allow a deduction for expenses incurred to obtain such services. We agree with respondent.

Section 214(a) provides a deduction for "the care of one or more dependents (as defined in subsection (d)(1)), but only if such care is

---

[7] To qualify, petitioner must, among other requirements, prove that he did not know the whereabouts of his ex-spouse at any time during the taxable year, or at least up to the date of the, actual divorce . He does not even allege such.

[8] Sec. 214 appears to have been passed in response to a number of cases, most well-known of which are *Henry C. Smith*, 40 B.T.A. 1038 (1939), affirmed per curiam 113 F.2d 114 (C.A. 2, 1940), and *Mildred A. O'Connor*, 6 T.C. 323 (1946), which had held that such expenses as petitioner is now seeking to deduct are nondeductible personal expenses. Where sec. 214 has not covered a deduction claimed for child care, our decisions have recognized the continuing validity of the *Smith* and *O'Connor* characterization, and we have denied child care deductions, *Michael P. Nammack*, 56 T.C. 1379, 1383–1385 (1971), affirmed per curiam 459 F.2d 1045 (C.A. 2, 1972), certiorari denied 409 U.S. 991 (1972) ; *Kenneth S. King*, 19 T.C.M. 1519–1520 (1960). Petitioner, indeed, does not even contest the point that, but for sec. 214, child care expenses would be nondeductible personal expenses. Thus, it makes no difference to our decision on the issue before us whether we apply the statute to petitioner as if he were a woman, or consider his position in the absence of the statute. In either case, the expenses he seeks to deduct are nondeductible personal expenses.

for the purpose of enabling the taxpayer to be gainfully employed." "Dependents" includes sons, stepsons, daughters, and stepdaughters under the age of 13 for whom the taxpayer is entitled to a section 151 (e) (1) exemption or exemptions on his income tax return. Sec. 214 (d) (1) (A). What constitutes "care" for such dependents depends on how broadly one wishes to define the service. Interpreted narrowly, "care" might be argued to include only services relating to the protection of the children, i.e., keeping them "out of trouble" and other general supervision.[9] Interpreted more broadly, "care" could include the additional types of services for which petitioner is here claiming a deduction: keeping the children's rooms clean and preparing their meals. Both of these latter services clearly are important to the general health and well being of the children.

While the statute itself does not give us an answer as to how broadly or narrowly to define the concept "care," it is clear from congressional committee reports submitted at the time of the passage of section 214 in 1954 that the Congress intended only that the more narrow class of services be covered:

If the taxpayer has a maid or housekeeper who cares for the children (or other qualified dependents) in addition to her other household duties of cleaning and cooking, the cost of the maid's salary must be prorated and only that portion which is allocable to child (or other qualified dependents) care may be taken as a deduction. * * * [S. Rept. No. 1622, to accompany H. R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 221 (1954).]

See also H. Rept No. 1337, to accompany H. R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. A61 (1954).

In addition, in 1971, Congress amended section 214 to specifically include payments for "household services" as deductible expenditures. While Congress nowhere specifically defined what it meant by the term "household services," the conference committee report did indicate that the new service deduction would not include payments to one employed predominantly "as a gardener, bartender, or chauffeur." S. Rept. No. 92–553 (Conf. Rept.), 92d Cong., 1st Sess. (1971), 1972–1 C.B. 661; see also, to the same effect, H. Rept. No. 92–708 (Conf. Rept.), to accompany H. R. 10947 (Pub. L. 92–178), 92d Cong., 1st Sess., p. 42 (1954). In light of this restrictive language we would have to render the amendment virtually meaningless if we did not read it to include expenses for cleaning and cooking, probably the two services most commonly thought of as household services. Thus, it is our view that Congress first intended in the 1971 amendment to cover the extra services for which petitioner is here claiming a deduction. Unfortu-

---

[9] This is the view respondent has taken in interpreting the statute. Sec. 1.214–1 (f) (2) (i), Income Tax Regs.

nately for petitioner, however, the 1971 amendment was made to apply only to taxable years beginning after December 31, 1971. Pub. L. 92–178, sec. 210(c) (Dec. 10, 1971). Hence, we hold, that section 214, as it applies to the 1968 taxable year, does not provide a deduction for that portion of petitioner's expenses in the later period which are allocable to cleaning and cooking. We find such expenses to be non-deductible personal expenses. *Mildred A. O'Connor*, 6 T.C. at 324.

Petitioner does not dispute respondent's finding that 25 percent or $75 of the claimed deduction for the later period was incurred for cooking and cleaning services. Because this determination of respondent is entitled to a presumption of correctness, and because of the lack of any contradictory evidence as to its reasonableness, we uphold respondent's finding as to allocation. *Ollie V. Kessler*, 39 B.T.A. 646, 651–652 (1939); *Alcazar Hotel, Inc.*, 1 T.C. 872, 880 (1943).

*Decision will be entered for the respondent.*