LENA MAE LOVELACE AND LOUIS B. LOVELACE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 807-72.    Filed November 7, 1974.

Lena Mae Lovelace, pro se.
*Robert W. West,* for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1969 in the amount of $182.94. The only issue for decision is whether petitioners are entitled to all or any part of a claimed deduction of $900 for child care expense in the calendar year 1969.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners husband and wife, residents of Gulf Breeze, Fla., at the time their petition in this case was filed, initially filed separate individual income tax returns for the calendar year 1969 on the basis of married persons filing separate returns. Petitioner Lena Mae Lovelace on her separate return reported income from salary of $7,892 and claimed a $900 deduction for child care expense. Petitioner Louis B. Lovelace on his separate income tax return for the calendar year 1969 reported $500 of income from salary as a salesman.

In September 1971 petitioners filed an amended return on Form 1040X. This return was a joint return and included the salary income previously separately reported by each of petitioners. Under the "Explanation of Changes," the following is shown:

changing from filing:
  Married filling [sic] seperate [sic]
Return and Spouce [sic] is also filing Return
  To
Married filing Joint Return.
  I was advised to make this change even though Mr. Lovelace was in the home only three months during 1969.

On this joint Federal income tax return petitioners claimed a deduction for child care expense of $900 as part of their claimed itemized deductions.

Mrs. Lovelace was employed during the entire year 1969 as a social worker. Mr. Lovelace was employed by Pensacola Buggy Works Sales Corp. for approximately the first 2 months of 1969. On February 26, 1969, Mr. Lovelace in accordance with his doctor's instructions entered Sacred Heart Hospital in Pensacola, Fla., for treatment of high blood pressure and high blood sugar. On March 24, 1969, Mr. Lovelace was released from Sacred Heart Hospital to be tried on March 25 for embezzlement. On March 25 he was convicted of embezzlement. He was in the county jail from March 25 to April 7 at which time he was transferred to Lake Butler Prison Hospital in Florida for treatment of high blood pressure and a blood sugar disorder. He remained in Lake Butler Hospital until April 21, 1969, when he was transferred by ambulance to the Raiford State Prison Hospital to

continue treatment for high blood pressure and a blood sugar disorder. He was transferred from the Lake Butler Hospital to the Raiford State Prison Hospital because of the fact that the Raiford Hospital had doctors around the clock and the Lake Butler Hospital did not. Mr. Lovelace stayed in the Raiford Hospital until June 16, 1969, when he was returned to Lake Butler for processing, which included a physical examination and certain mental tests. On July 3, 1969, he returned to Raiford State Prison where he remained the balance of the year 1969 as a regular inmate.

Petitioners during 1969 had three minor children ages 4, 5, and 8. Mrs. Lovelace during 1969 paid the Gulf Breeze Child Care Center $1,159 for the care of her three minor children in order that she would be able to work.

Respondent in his notice of deficiency to petitioners disallowed their claimed deduction for child care expense with the explanation that the claimed $900 deduction was not allowable under section 214 of the Internal Revenue Code of 1954,[1] because: "as married taxpayers you are required under this section to reduce child care expense by the amount by which your combined gross income of $8,392.00 exceeds $6,000.00."

## OPINION

Section 214(a), as applicable to the taxable year 1969,[2]

[1] All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.

[2] SEC. 214. EXPENSES FOR CARE OF CERTAIN DEPENDENTS.

(a) GENERAL RULE.—There shall be allowed as a deduction expenses paid during the taxable year by a taxpayer who is a woman or widower, or is a husband whose wife is incapacitated or is institutionalized, for the care of one or more dependents (as defined in subsection (d)(1)), but only if such care is for the purpose of enabling the taxpayer to be gainfully employed.

(b) LIMITATIONS.—

(1) DOLLAR LIMIT.—

(A) Except as provided in subparagraph (B), the deduction under subsection (a) shall not exceed $600 for any taxable year.

(B) The $600 limit of subparagraph (A) shall be increased (to an amount not above $900) by the amount of expenses incurred by the taxpayer for any period during which the taxpayer had 2 or more dependents.

(2) WORKING WIVES AND HUSBANDS WITH INCAPACITATED WIVES.—In the case of a woman who is married and in the case of a husband whose wife is incapacitated, the deduction under subsection (a)—

(A) shall not be allowed unless the taxpayer and his spouse file a joint return for the taxable year, and

(B) shall be reduced by the amount (if any) by which the adjusted gross income of the taxpayer and his spouse exceeds $6,000.

This paragraph shall not apply, in the case of a woman who is married, to expenses incurred

provided for the allowance of a deduction for expenses paid during the taxable year by a taxpayer who is a woman or widower, or is a husband whose wife is incapacitated or institutionalized, for the care of dependents if such care was for the purpose of enabling the taxpayer to be gainfully employed. Section 214(b) contains limitations on the allowance of the deduction to married taxpayers. This section provides that in the case of a woman who is married or a husband whose wife is incapacitated, the deduction shall not be allowed unless a joint return is filed for the taxable year, and that the amount deductible shall be reduced by the amount, if any, by which the adjusted gross income of the taxpayer and his spouse exceeds $6,000.[3] However, section 214(b) also contains a provision that the $6,000 gross income limitation shall not apply, in the case of a woman who is married, to expenses incurred while her husband is incapable of self-support because mentally or physically defective, or, in the case of a husband whose wife is incapacitated, to expenses incurred while his wife is institutionalized if such institutionalization is for a period of at least 90 consecutive days or a shorter period if terminated by her death.

Petitioners in this case contend that Mr. Lovelace was institutionalized within the meaning of section 214(b) and therefore they should be entitled to the child care deduction without the $6,000 gross income limitation applicable to married couples. Petitioners contend that Mr. Lovelace was institutionalized for all except the first 2 months of 1969 since he was institutionalized for the 26 days he was in Sacred Heart Hospital,

while her husband is incapable of self-support because mentally or physically defective, or, in the case of a husband whose wife is incapacitated, to expenses incurred while his wife is institutionalized if such institutionalization is for a period of at least 90 consecutive days (whether or not within one taxable year) or a shorter period if terminated by her death.
* * *
(c) SPECIAL RULE WHERE WIFE IS INCAPACITATED OR INSTITUTIONALIZED.—In the case of a husband whose wife is incapacitated or is institutionalized, the deduction under subsection (a) shall be allowed only for expenses incurred while the wife was incapacitated or institutionalized (as the case may be) for a period of at least 90 consecutive days (whether or not within one taxable year) or a shorter period if terminated by her death.

[3] Sec. 214(d)(5), I.R.C. 1954, as applicable to the year 1969, provides that a woman who is legally separated from her spouse or who has been deserted by her spouse and who does not know, and has not at any time during the taxable year known, his whereabouts shall not be considered married. Petitioners do not contend that because Mr. Lovelace was in the penitentiary, this exception applies. If such a contention had been made, it would not be valid under our holding in *Marcia W. Seaman,* T.C. Memo. 1970-284, affd. 479 F. 2d 336 (C.A. 9, 1973).

for the approximately 2 weeks he was in the county jail, for the time he was in the prison hospitals at Lake Butler and Raiford, and for the time he was in the Raiford Penitentiary.

Petitioners further contend that if section 214(b) is interpreted only to apply to a husband whose wife is institutionalized and not to a woman whose husband is institutionalized, then the section is unconstitutional because of discriminating on the basis solely of sex. In our view, it is unnecessary to reach petitioners' constitutional argument since we consider "institutionalized" as used in the statute to refer to being in an institution for the treatment of a mental or physical defect.

Section 1.214-1(b)(5)(iv), Income Tax Regs.,[4] provides that a wife is considered to be institutionalized only while she is a resident or inmate of a public or private hospital, or other similar institution, for the purpose of receiving medical care or treatment. In the context in which "institutionalized" is used in section 214(b), we consider this definition of "institutionalized" valid. We also consider valid the provision of this same regulation that a wife who resides at an institution for some purpose other than receiving medical care or treatment "is not institutionalized" within the meaning of section 214(b). The reference in section 214(b) to a wife who is institutionalized is in connection with a wife who is incapacitated. The provision of section 214(b) removing the $6,000 gross income limitation for a married woman while her husband is "incapable of self-support because mentally or physically defective" is similar to but less stringent than the provision removing this limitation for a husband "whose wife is incapacitated." While a person might be incapable of self-support because "mentally or physically defective" and not be incapacitated, ordinarily a person could not be incapacitated within the meaning of section 214(b) without being incapable of self-support because "mentally or physically defective." In fact, section 1.214-1(b)(5)(iii), Income Tax Regs., in defining an incapacitated wife, states: "A wife is considered to

[4] Sec. 1.214-1(b)(5)(iv), Income Tax Regs.: *Institutionalized wife.* A wife is considered to be institutionalized only while she is, for purposes of receiving medical care or treatment, an inpatient, resident, or inmate of a public or private hospital, or other similar institution. A wife who resides at a hospital, sanitarium, or other similar institution other than for purposes of receiving medical care or treatment, as, for example, by reason of her employment, is not institutionalized. Generally, a wife is not considered institutionalized while residing at a health or beauty ranch or similar establishment even though some medical care or treatment is provided.

be incapacitated during any period of time during which she is incapable of caring for herself because of a mental or physical defect." This paragraph of the Income Tax Regulations concludes with the sentence, "A wife is also considered to be incapacitated during any period of time * * * during which she is institutionalized."

The provisions of the regulations with respect to when a husband is "incapable of self-support" because of a mental or physical defect are not nearly as precise as the regulations regarding when a wife is considered to be "incapacitated." Section 1.214-1(b)(3)(i) merely provides that a deduction is allowed without regard to the $6,000 limitation for expenses paid by a married woman whose husband is incapable of self-support because he is "mentally defective or physically disabled" at the time the expenses are incurred. This section refers to the preceding subparagraph for a definition of "mentally defective or physically disabled." However, section 1.214-1(b)(2) adds little to the statement in section 1.214-1(b)(3). Section 1.214-1(b)(2) provides:

The determination of whether the taxpayer's husband is incapable of self-support because of a mental defect or physical disability shall be made without regard to his income from sources other than his own earnings. For purposes of this subparagraph, the term "earnings" means wages, salaries, commissions, professional fees, and other amounts received as compensation for personal services actually rendered. It does not include income such as pensions, annuities, sick pay, interest, dividends, or rents.

In our view a husband who is receiving medical care or treatment as an inpatient in a public or private hospital would generally during the time institutionalized in such hospital, be incapable of self-support because he is mentally defective if his care in the hospital is for a mental defect or physically defective if his treatment is for a physical defect. A person who is hospitalized for treatment of a physical ailment is generally in no position to pursue any work necessary to his self-support. While it is conceivable that a person whose work was as a writer, inventor, or of a similar nature might not be rendered incapable of self-support because of a physical ailment which required his hospitalization, such would not be the case for persons in occupations which require their presence outside the hospital. Mr. Lovelace was a salesman and it would not be feasible for him to carry on this occupation from a hospital. Whether a person is "incapable of

self-support" is a fact question to be determined by the facts in the particular case. However, the fact that respondent's regulations provide that a wife is considered "incapacitated" during any period of time she is hospitalized for treatment of a physical ailment casts some light on the standard to be used for this factual determination. In any event this definition of "incapacitated" should also apply as a part of the definition of "incapable of self-support because of a mental or physical defect" except under extraordinary factual circumstances.

Petitioners in their brief argue that a person who is in a State penitentiary is there for "treatment" of the mental or physical defect which caused him to commit the act for which he was sent to the penitentiary. We do not agree with this argument of petitioners. It is incumbent on petitioners to show that Mr. Lovelace, during 1969, had a mental or physical ailment which caused him to be "incapacitated" or "incapable of self-support because of a mental or physical defect." They have not shown this to be the fact at any time except when Mr. Lovelace was hospitalized for treatment of his physical ailments. On July 3, 1969, Mr. Lovelace was returned to Raiford Penitentiary as a regular inmate, and insofar as this record shows did whatever work was assigned to him. The fact that he was not employed in a manner which was of financial assistance to his family is immaterial to the issue here. He was not incapable of self-support because of a mental or physical defect at that time. Neither was he "incapacitated" when in the penitentiary within the meaning of section 214(b).

We recognize that while Mr. Lovelace was in the prison hospital he was not dependent on Mrs. Lovelace for his support but apparently was supported by the State of Florida. However, the criteria of the statute is that the husband be incapable of self-support because of a physical defect and not that he be dependent for support on his wife. See sec. 1.214-1(b)(2), Income Tax Regs., heretofore quoted.

In the instant case the record shows that Mr. Lovelace was hospitalized from February 26 through March 24 and from April 7 through June 15 of 1969 with high blood pressure and a high blood sugar problem. Both high blood pressure and high blood sugar are the types of illness which would normally be considered a physical defect. Whether such an illness would cause an individual to be. incapable of self-support if he were not

hospitalized would be a matter of proof. However, for the reasons heretofore stated, except in case of a limited number of occupations, the fact that a man is in a hospital in itself shows that he is incapable of self-support during the period of time that he is in the hospital without earnings.

Mr. Lovelace was in the hospital 26 days in February and March and 69 days from April 7 through June 15, making a total of 95 days, undergoing medical treatment for a physical defect. The record shows he had no earnings during this period. In our view the fact that all but 26 days of this time was in a public prison hospital is immaterial. The statute merely requires that the husband be incapable of self-support because of a mental or physical defect in order for a married woman to be entitled to the child care deduction without being limited by the $6,000 of adjusted gross income.

Respondent points out that Mr. Lovelace was not in the hospital for 90 consecutive days. However, the requirement that the spouse be institutionalized for 90 consecutive days in order for the $6,000 gross income limitation to be inapplicable is only in the case of a husband whose wife is incapacitated. A married woman is, under the statute, entitled to the deduction for child care expenses without the $6,000 gross income limitation for any period of time her husband is incapable of self-support because of a physical defect, whether or not for a consecutive 90-day period. Since the person in this case who paid the child care expenses to enable her to work was the wife, we need not decide whether the requirement that a wife be institutionalized for 90 consecutive days for the $6,000 gross income limitation not to apply to a husband whose wife is incapacitated is unconstitutional discrimination because of being based solely on sex.

In *Charles E. Moritz,* 55 T.C. 113 (1970), we held a provision which was applicable to a single woman and not to a single man not to be unconstitutional because of being discriminatory. The United States Court of Appeals for the Tenth Circuit reversed our holding (*Moritz v. Commissioner,* 469 F. 2d 466 (1972)). However, under the facts here present, the requirement for the $6,000 gross income limitation to be inapplicable is less stringent in the case of a married woman than in the case of a husband whose wife is incapacitated, and, therefore, we do not reach petitioners' constitutional argument.

It is, however, necessary to determine the amount of deduction to which petitioners are entitled because of Mr. Lovelace's being physically incapacitated for 95 days. Section 1.214-1(b)(3)(ii), Income Tax Regs., provides in part:

Where the husband is capable of self-support for part of a taxable year the child care expenses incurred for such part shall be treated under subparagraph (2) of this paragraph. See * * * example (8) of paragraph (c)(3)(ii) * * * of this section.

Example 8 of subparagraph (c)(3)(ii) of section 1.214-1, Income Tax Regs., provides as follows:

*Example (8).* H and W were married at all times during 1964. As a result of an accident, H incurred injuries which rendered him incapable of self-support during 1964 until September 1. They had one dependent child age 10. The adjusted gross income of H and W for 1964 was $6,200. W paid $60 each month in 1964 for child care expenses. The deduction allowable to W under section 214 is $520. This amount is composed of $480, the amounts paid during H's period of disability and $40, the expenses paid from September to December, inclusive ($240) reduced by $200, the excess of the adjusted gross income ($6,200) over $6,000.

Example 11 of section 1.214-1(c)(3)(ii), Income Tax Regs., carries a similar provision for prorating where a husband's wife is incapacitated. Since the proration applies in the cases of both the husband and the wife, there is no sex discrimination in the provision.

Our record does not show precisely the daily or monthly amount paid by Mrs. Lovelace for child support. It does show the total payment, and it does show that Mrs. Lovelace worked the entire year, requiring that the three children be cared for the entire year. Cf. *William C. Smail, Jr.,* 60 T. C. 719 (1973), on appeal (C.A. 10, Nov. 16, 1973). While the record is defective to the extent that it does not show the amount paid by Mrs. Lovelace during the precise period that her husband was incapable of self-support because of a physical defect, we consider it reasonable to assume that the same pro rata amount was paid for each day and therefore reasonable to allow a deduction to petitioners for 95/365 of the amount of $1,159 paid for child support for the entire year 1969. We are aware that this is an imprecise method of arriving at the amount of deduction since presumably the children were not in the nursery school on Saturdays and Sundays. There is no showing of whether a payment was made during any period of vacation for Mrs. Lovelace and presumably at least the oldest of the three children would be in

public school during the winter months and perhaps not require the same pro rata cost of child care as that child would during the summer months. However, under the facts shown in this case, and it being clear that during the entire year amounts were paid for child care, we consider a reasonably accurate figure as to the expenses for child care during the 95-day period to be shown by prorating the expenses on a daily basis. In this manner, we arrive at a deduction for child care expenses to which petitioners are entitled of approximately $300 but will leave the exact computation of the 95/365 of $1,159 to the parties in their recomputation under Rule 155.

*Decision will be entered under Rule 155.*