T.C. Memo. 1996-43


UNITED STATES TAX COURT


CRAIG E. AND DEBBIE A. BROWN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6830-94.     Filed February 6, 1996.

Craig E. and Debbie A. Brown, pro se.

<u>Andrew Lee</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1] Respondent determined a deficiency in petitioners' 1989 Federal income tax return in the amount of $5,073, plus an accuracy-related penalty under section 6662(a) in the amount of $1,014.

---

[1] All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision in this case are: (1) Whether petitioners, are entitled to a charitable contribution deduction in excess of the amount allowed by respondent, (2) whether petitioners are entitled to a child care credit, (3) whether petitioners are entitled to additional deductions in connection with their Schedule C computer consulting activity, (4) whether petitioners are entitled to deductions in connection with a Schedule C business activity not claimed on the original return, and (5) whether petitioners are liable for the accuracy-related penalty.

Some of the facts have been stipulated and are so found. The stipulation of facts and the supplemental stipulation of facts are incorporated herein by this reference. Petitioners resided in Lomita, California, at the time of the filing of their petition.

During the year at issue, petitioner Debbie A. Brown was employed by Maxicare, a health provider. Petitioner Craig E. Brown (petitioner) was self-employed as a computer consultant. Petitioners have three children. In 1989, Gabriel was 11, Yulanda was 8, and Miranda was 4. Gabriel and Yulanda attended school from 8 a.m. until 2:30 p.m. Miranda attended either Van Ness Nursery School or Pacific Coast Preschool from 8 a.m. until 6 p.m. In 1989, petitioner paid Ruth Mayen, a housekeeper who resided in the home Monday through Friday, to take care of the

children before and after school, drive the children to school, and clean the house.

Petitioner is a member of Christ Holy Sanctified Church (CHSC). Petitioner's father, Eugene Brown, is the pastor of CHSC. In 1989, petitioner was assigned the position of minister of music by the CHSC board of elders. In this position, petitioner organized choirs, played music, and performed other music-related functions. Petitioner was not an employee of CHSC and did not receive a salary from CHSC. In addition to his CHSC music ministry, petitioner played music and organized choirs for other churches and organizations, conferences, weddings, and funerals.

A tenet of CASC is tithing; i.e., contributing 10 percent of one's income to the church. To set an example for the congregation, CASC leaders often contribute a greater amount to the church. In addition to tithes, CASC also collects donations for the building fund, visiting minister's fund, the Federated Church, and Greater Good News United Fellowship. In 1989, petitioner made contributions to CASC by cash and check.

Petitioner has been a member of the Pentecostal Heritage (PH) since 1982. PH is a nonprofit organization founded to restore a house originally built by PH in 1906. PH asks its members to contribute $120 per year, plus extra amounts at special events. In addition, PH members volunteer their time to assist in the restoration of the house. Petitioner organized

choirs, conducted rehearsals, selected music, and located instruments for musical performances for PH. In addition, petitioner assisted with the cleaning, painting, and plumbing for PH. Petitioner did not receive a salary or other compensation from PH.

In 1989, petitioner formed a joint venture with Art Glass, who was also the chairman of PH, to develop software and a computer system for churches. In theory, this computer system would allow the pastor to select and play music at the touch of a button from the pulpit. In addition, they intended to develop financial and record-keeping software for churches. Petitioner and Mr. Glass planned to sell the software, music, and computer to interested churches.

Mr. Glass offered testimony about various activities of the joint venture, but was uncertain as to whether they occurred in 1989 or 1990. According to his testimony, he and petitioner made several trips to a recording studio in Ontario, California, to record various instruments such as the piano, organ, and drum to use in developing the computer software. Mr. Glass also testified that he and petitioner attended a music conference in Philadelphia, Pennsylvania, to observe trends and changes in black church music. In addition, Mr. Glass testified that he and petitioner attended several computer shows to see the latest computer technology and to locate a specific organ sound for their computer system.

Petitioner and Mr. Glass made one demonstration of the record-keeping software to a woman who was the owner of a small business; however, the date of this demonstration is unknown. No records of the joint venture were produced, no testimony was elicited as to an amount of any specific expenditure, and Mr. Glass indicated that petitioner did not contribute any funds to the joint venture. Petitioners filed their 1989 Federal income tax return (the original return) on or before April 15, 1990. The original return was prepared by the accounting firm of Williams & Tucker. On the Schedule C attached to the return, petitioner reported gross income from his computer consulting activity in the amount of $81,817 and claimed the following expenses:

| Expense | Amount claimed |
|---|---|
| Car and truck | $3,390 |
| Rent/lease of business equipment | 50 |
| Supplies | 138 |
| Travel | 1,562 |
| Meals and entertainment | 140 |
| Utilities | 432 |
| Education | 1,824 |
| Bank charges | 153 |
| Laundry | 520 |
| Temporary help | 2,525 |
| Home office | 1,253 |
| | 11,987 |

On that return, petitioners claimed a charitable contribution deduction in the amount of $18,151 on Schedule A and a child care credit in the amount of $960.

Thereafter, petitioner met Sam Morris (Morris), a Las Vegas accountant, at a conference in Los Angeles, California. In response to questions by Morris, petitioner explained his business and the types of expenses he incurred. Morris offered to review petitioners' returns to see whether petitioner could take advantage of certain deductions. Petitioner checked Morris' references and found nothing unusual. Sometime in 1991, petitioner sent a 30-pound box by Federal Express to Morris' office in Las Vegas, Nevada. Petitioner kept no receipt or list of the documents contained in the box, but he believes the box contained all of his tax records for 1988 through 1991, including credit card statements, bank statements, receipts, copies of prior tax returns, and his daily log for those years. Morris prepared, and petitioners signed and filed, a Form 1040X (the amended return) for taxable year 1989. When Morris presented petitioner with the amended return, petitioner did not review it in depth prior to signing and filing it. Respondent received the amended return on April 3, 1992. On the Schedule C for the computer consulting activity attached to the amended return, petitioner reported gross receipts in the amount of $75,312 and claimed the following expenses:

| Expense | Amount claimed |
| --- | --- |
| Car and truck | $3,390 |
| Depreciation | 3,591 |
| Insurance | 1,412 |
| Other interest | 3,277 |
| Legal/professional | 1,301 |
| Rent/lease machinery and equipment | 50 |

```
Rent/lease other business
   property                5,560
Repairs                    4,213
Supplies                     138
Travel                     1,562
Meals and entertainment      940
Utilities                  2,104
Wages                     15,100
Software                   5,755
                          48,393
```

A second Schedule C was attached to the amended return for an activity described as Minister of Music. On this Schedule C petitioner reported gross receipts of $6,505,[2] and claimed the following expenses:

| Expense | Amount claimed |
|---|---|
| Car and truck | $1,513 |
| Commissions | 16,638 |
| Depreciation | 792 |
| Office expense | 711 |
| Rent or lease other business equipment | 1,174 |
| Supplies | 2,808 |
| Taxes | 537 |
| Travel | 4,994 |
| Meals and entertainment | 1,208 |
| Postage, telephone, special robes seminars, promotions, dues and publications, licenses and fees | 14,560 |
| | 44,935 |

The amended return did not include a Schedule A, and no charitable contribution deduction was claimed thereon.

On February 11, 1994, a notice of deficiency was issued to petitioners based upon the original return. Respondent therein

---

[2] The $6,505 represents income from petitioner-'s computer consulting activity, and the total income reported on the two Schedules C equals the gross income reported on the Schedule C attached to the original return.

disallowed the claimed charitable contribution deduction[3] and child care credit. Respondent did not process the amended return, and it was not considered at the time respondent prepared the notice of deficiency.

Sometime in 1991 or 1992, the Criminal Investigation Division of the Internal Revenue Service (IRS) began an investigation of Morris. On March 27, 1992, a search warrant was issued authorizing a search of Morris' office for various items. Pursuant to the search warrant, investigators were authorized to seize, among other things, Federal income tax returns or amended returns for the years 1989, 1990, and 1991 which included Schedule A itemized deductions or Schedule C business losses; amended Federal income tax returns for 1990, 1991, and 1992; and client lists or other records identifying clients. The search warrant was executed on March 30, 1992. The return on the search warrant reflects that 84 boxes of documents were seized, including 3 boxes which contained information related to petitioners. These boxes were identified as "Brown, Craig--Tax records and return", "Craig & Debbie Brown financial records", and "Amended return, Brown". Subsequently, Special Agent Steven Boyd returned to petitioners all of their identified documents which were seized pursuant to the execution of the search warrant.

---

[3] The remaining itemized deductions were less than the standard deduction, so respondent disallowed them and allowed petitioners the standard deduction.

None of those returned documents allegedly pertained to 1989.

Discussion

We begin by noting that, as a general rule, the Commissioner's determinations are presumed correct and that the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction or credit claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This includes the burden of substantiation. Hradeskv v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). A taxpayer's failure to produce his records does not relieve him of this burden of proof. Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977).

Petitioners contend that they are unable to substantiate the claimed deductions and child care credit because all of their 1989 tax records were seized, and subsequently lost, by the IRS. In effect, petitioners argue that they should be relieved of their burden of substantiating the deductions and credit.

There is no authority for placing the burden of proof on respondent in the present situation. As we stated in American Police & Fire Found., Inc. v. Commissioner, 81 T.C. 699, 706 (1983):  "Petitioner's burden of going forward with the evidence

does not shift merely because his records are unintentionally lost, whether by petitioner, [or] the Government * * *. Instead, the type of evidence that may be offered to establish a fact is altered."

The loss of tax records does not leave a taxpayer helpless in meeting his substantiation burden. In general, when a taxpayer's records have been lost or destroyed through circumstances beyond his control, he is entitled to substantiate the deductions by reconstructing his expenditures through other credible evidence. American Police & Fire Found., Inc. v. Commissioner, supra; Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979); Cook v. Commissioner, T.C. Memo. 1991-590.

Pursuant to a search warrant, special agents of the IRS were authorized to search Morris' offices and to seize certain records. Consequently, some of petitioners' records were seized by the IRS, although it is unclear whether, and to what extent the seized documents included petitioners' 1989 tax records. Apparently, Morris' office was extremely disorganized, and several boxes and file cabinets containing records were not seized. However, there is no information as to whether petitioners' 1989 tax records were left in Morris' office. Based on the record, we find that petitioner mailed his tax records from 1988 through 1991 to Morris, some of those records were seized pursuant to the execution of a search warrant, all seized records identified as belonging to petitioners were returned to

them, and petitioners no longer have any 1989 records. Thus, all we can conclude is that petitioners' 1989 original tax records are not now available.

However, petitioners still bear the burden of substantiating the claimed deductions and credit. To do so, petitioners may present secondary evidence. Petitioner contends that he cannot reconstruct his records because the cost to duplicate his records is prohibitive. However, the cost to duplicate petitioner's records, which may substantiate the deductions and credit, does not relieve petitioner of his burden of proof.

We will now first consider the issues raised by respondent's determination in the notice of deficiency.

Charitable Contribution Deduction

Petitioners claimed a charitable contribution deduction in the amount of $18,151 on the original return. In the notice of deficiency respondent disallowed the entire amount, but respondent conceded on brief that petitioners made charitable contributions to CHSC in the amount of $2,657, which were substantiated by copies of their check carbons.[4]

Section 170 allows a deduction for charitable contributions made within the taxable year. Sec. 170(a).  For charitable

---

[4]    It has not been satisfactorily explained how petitioners have copies of their 1989 check carbons, nor why such evidence is not available for the substantiation of the other items in dispute herein.

contributions of cash, a taxpayer shall maintain for each contribution a canceled check or receipt from the donee indicating the name of the donee, the date of the contribution, and the amount of the contribution, or in the absence of a check or receipt from the donee, reliable written records showing the name of the donee, the date of the contribution, and the amount of the contribution. Sec. 1.170A-13(a)(1), Income Tax Regs.

Petitioner testified that he made cash and check contributions to CASC and that he believed in tithing. Eugene Brown testified that petitioner made contributions to CASC, but could not testify as to specific dates or amounts. However, he did testify that the church maintained records pertaining to contributions, that he did not bring those records to the trial, and that petitioner did not request him to do so. Petitioner attempted to remedy this lack of evidence by attaching to his reply brief several documents purporting to verify his charitable contributions to CASC. Evidence must be submitted at trial. Documents attached to briefs and statements made therein do not constitute evidence and will not be considered by the Court. Rule 143(b); Evans v. Commissioner, 48 T.C. 704, 709 (1967), affd. per curiam 413 F.2d 1047 (9th Cir. 1969); Lombard v. Commissioner, T.C. Memo. 1994-154, affd. without published opinion 57 F.3d 1066 (4th Cir. 1995); Pauli v. Commissioner, T.C. Memo. 1984-591.

According to the testimony of Art Glass, PH members are requested to donate $120 per year. Petitioner presented no

receipts or canceled checks from PH for any contributions made by him. Mr. Glass testified that PH maintained records of contributions and that petitioner did not request Mr. Glass to bring those records to trial.

Petitioner's testimony, as well as the testimony of Eugene Brown and Art Glass, as to petitioner's general giving patterns is not sufficient to substantiate petitioner's charitable contributions. In addition, petitioner's argument on brief that the 1990 check carbons, which were submitted as evidence, are representative of his giving patterns is not sufficient to substantiate petitioner's charitable contributions for 1989. Petitioner presented no receipts, canceled checks, or written records to substantiate the claimed deduction. We note that written records of contributions were maintained by CASC and PH; however, petitioner failed to present those documents. Accordingly, petitioner is not entitled to a charitable contribution deduction in excess of the amount previously allowed by respondent.

Child Care Credit

According to Form 2441, Child Care and Dependent Expenses, petitioner paid $9,620 to Ruth Mayen and $840 to Pacific Coast for child care services. Petitioner testified that he also paid Van Ness Nursery School for child care services.

Section 21(a) generally provides an allowance for a credit against tax of any individual who maintains a household which

includes one or more qualifying individuals. The amount of the credit is equal to the applicable percentage of the employment-related expenses paid by the individual. Sec. 21(a). The term "qualifying individual" under section 21(b) includes a dependent of the taxpayer under age 13 with respect to whom the taxpayer is entitled to a dependency deduction under section 151(c). The allowable credit, under section 21(b)(2), generally is based upon employment-related expenses that are incurred to enable the taxpayer to be gainfully employed. The term "employment-related expense" includes expenses for household services and expenses for the care of a qualifying individual. Sec. 21(b)(2)(A). Employment-related expenses are explained in section 1.44A-1(c)(2), Income Tax Regs.

Sec. 1.44A-1(c). Employment-related expenses--

> (2) Household services. Expenses are considered to be paid for household services if they are paid for the performance in and about the taxpayer's home of ordinary and usual services necessary to the *maintenance of* the household. However, expenses are not considered as paid for household services unless the expenses are attributable in part to the care of the qualifying individual. Thus, amounts paid for the services of a domestic maid or cook are considered to be expenses paid for household services if a part of those services is provided to the qualifying individual.* * *

The term "household services" includes both cleaning and cooking, probably the two services most commonly thought of as household services. Small v. Commissioner, 60 TC 719, 727 (1973), affd. without published opinion (75-2 USMC par. 9512, 10th Cir. October 9, 1974, 35,AFTR 2d 75-1383); sec. 1.44A-1(c)(7), Example (3),

Income Tax Regs.

Respondent contends that petitioners are not entitled to the credit because Ruth Mayen provided housekeeping services. According to petitioner's testimony, Ruth Mayen was primarily hired to care for Gabriel and Yulanda, although she did provide housekeeping services. We find that a part of Ruth Mayen's housekeeping services included the care of Gabriel and Yulanda.

Unfortunately, petitioner presented very little documentation and testimony as to the amounts paid Pacific Coast Preschool, Van Ness Nursery, and Ruth Mayen.[5]  However, the Court is satisfied that some amount was expended by petitioners for the care of Gabriel, Yulanda, and Miranda. Based on the record and using our best judgment under Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), the Court estimates that child care expenses paid by petitioners to Pacific Coast Preschool and Van Ness Nursery were $840 for 1989. Further, the Court estimates that the child care expense paid by petitioners to Ruth Mayen was $2,000 for 1989. Thus, petitioners are allowed a child care credit based upon these amounts.

Schedule C Activities

---

[5]   Petitioner did present cancelled checks payable to Pacific Coast in the amount of $198 and Van Ness in the amount of $196.50. In addition, petitioners made statements in their reply brief as to the amount paid to Ruth Mayen for child care services. However, statements in briefs do not constitute evidence and will not be considered by the Court.

We now consider the claims of petitioners as set forth in the amended return; viz, additional expenses for the computer consulting activity and expenses pertaining to the minister of music activity. In short, we must reject these claims because petitioner has utterly failed to (1) substantiate that he had any expenses related to his computer consulting activity in excess of those claimed on the original return ($11,987);[6] (2) that the music activity was one engaged in for profit[7] or that he incurred any deductible expenses in carrying on such activity; or (3) that the joint venture with Mr. Glass went beyond the preopening stage[8] or that he made any monetary contribution thereto.

---

[6] In fact, when questioned about many of the deductions, petitioner did not know the nature of the expenses claimed nor how Morris arrived at the figures on the amended return.

[7] To be engaged in a trade or business within the meaning of sec. 162, "the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Petitioner did not receive, nor did he expect to receive, any compensation from CHSC, PH, or any other church organization for his music activity, except perhaps for an occasional reimbursement of expense.

[8] In order to be currently deductible, the expenses must have been incurred after the taxpayer's trade or business actually commenced; expenses incurred prior to such time are nondeductible preopening expenses. Jackson v. Commissioner, 864 F.2d 1521, 1525-1526 (10th Cir. 1989), affg. 86 T.C. 492 (1986); Goodwin v. Commissioner, 75 T.C. 424, 433 (1980); affd. without published opinion 691 F.2d 490 (3d Cir. 1982); McManus v. Commissioner, T.C. Memo. 1987-457, affd. without published opinion 865 F.2d 255 (4th Cir. 1988). Thus, "carrying on any trade or business." requires a showing of more than initial research into business potential and solicitation of potential customers or clients.

(continued...)

Therefore, we are unable to allow petitioners any deductions in this regard.

Accuracy-related Penalty

Respondent determined that petitioners were liable for an accuracy-related penalty under section 6662(a) for negligence or intentional disregard of rules or regulations.

Petitioners' original return was prepared by Williams & Tucker. Petitioner did not offer any testimony with regard to the information he provided Williams & Tucker prior to the preparation of the original return. Inasmuch as the deficiency herein derives from the original return, we will not consider the amended return in this regard.[9]

Pursuant to section 6662(a), if any portion of an underpayment of tax is due to negligence or intentional disregard of rules or regulations, the taxpayer is liable for an amount equal to 20 percent of the portion of the underpayment attributable to such negligence or intentional disregard of the

---

[8](...continued)
Dean v. Commissioner, 56 T.C. 895, 902 (1971); Ping v. Commissioner, T.C. Memo. 1987-28; Goldman v. Commissioner, T.C. Memo. 1975-138. The activities must be currently engaged in for profit. Industrial Research Prods., Inc. v. Commissioner, 40 T.C. 578, 590 (1963).

[9]    We note, however, that according to petitioner's testimony, he provided Morris with all of his tax 1989 records, but he did not review the amended return in depth before he signed and filed it. Had he done so, he would have observed a Schedule C for the minister of music activity reflecting gross income which was clearly inaccurate.

rules or regulations. Negligence is defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. <u>Needy v. Commissioner</u>, 85 T.C. 934, 947 (1985). Petitioner has the burden of proof on this issue. <u>Bilby v. Commissioner</u>, 58 T.C. 757, 791 (1972).

If a taxpayer relies in good faith upon the advice of a competent and experienced accountant in the preparation of the taxpayer's return, the addition to tax for negligence or the intentional disregard of rules or regulations is not applicable. Sec. 6664(c); <u>WAIS v. Commissioner</u>, 94 T.C. 473, 487 (1990). To show good faith reliance, the taxpayer must show that the return preparer was supplied with all the necessary information and the incorrect return was a result of the preparer's mistakes. <u>Pepsin v. Commissioner</u>, 59 T.C. 473, 489 (1972).

We cannot conclude, based solely on petitioner's testimony, that petitioner provided Williams & Tucker with all the necessary information and substantiating records to prepare an accurate return. Accordingly, we hold that petitioners are liable for the penalty under section 6662(a).

To reflect the resolutions of the issues set forth above.

<u>Decision will be</u>

<u>entered under Rule 155</u>.